UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jane D., | Case No. 20-cv-1278-MJD-KMM |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Kilolo Kijakazi, *Acting Commissioner of Social Security*, | |
| Defendant. | |

James H. Greeman, Greeman Toomey, Minneapolis, MN, for Plaintiff.

James D. Sides, Social Security Administration, Dallas, TX, for Defendant.

Jane D. brought this suit challenging the denial of her application for disability benefits by the Commissioner of the Social Security Administration ("SSA"). This matter is before the Court for a report and recommendation on the parties' cross-motions for summary judgment. Pl.'s Mot. [ECF No. 19]; Def.'s Mot. [ECF No. 21]. For the reasons set forth below, the Court recommends that Ms. D's motion be denied, and the Commissioner's motion be granted.

I.   Background

Ms. D. was born in 1960 and suffers from several medical conditions for which she has received treatment over the years. Her conditions include fibromyalgia, chronic fatigue syndrome, major depressive order, generalized anxiety disorder, seasonal affective disorder, irritable bowel syndrome ("IBS"), sleep disturbance, and obesity. Tr. of Admin. Record ("R.") [Docket No. 18] at 324-26. The record also includes diagnoses of asthma, hypertension, rheumatoid arthritis, and Raynaud's phenomenon. R. 331, 442, 444. Among other issues, Ms.

1

D's symptoms include chronic pain, fatigue, difficulties with sleep, brain fog, anxiety, and forgetfulness. R. 66-68, 334, 345, 399, 421.

From 1989 to 2015, Ms. D. worked full time as a customer service representative for a company that manufactured and sold high school rings and other memorabilia. R. 46-48, 198. This position is a sedentary, semi-skilled occupation. R. 46-47, 198. During her last year of employment, Ms. D frequently missed work due to her severe pain and chronic fatigue. R. 63. In February 2015, Ms. D was terminated from her job due to excessive absenteeism. R. 51, 198.

On June 29, 2019, Ms. D applied for social security benefits alleging disability as of April 7, 2017. R. 173-77. She alleged that she was unable to work due to her fibromyalgia, chronic fatigue, arthritis in both knees, IBS, acid reflux, asthma, depression, anxiety, an upper left shoulder problem, and back pain. R. 196.

In support of her application, Ms. D explained that her conditions limit her ability to work because she is "very tired all the time," aches every day, suffers from headaches and weekly episodes of IBS, cannot remembering things unless she writes them down, and has pain in her feet and ankles when walking for any length of time. R. 203, 208. She also reported limitations in lifting, standing, walking, stair climbing, memory, and following instructions. R. 208. She stated that she can walk for 15 minutes before needing to rest, that her attention span lasts 30 minutes, and that her hands get achy, making it hard for her to write for any length of time. R. 208, 210. Ms. D did not report any functional limitations in sitting, reaching, completing tasks, concentration, understanding, or getting along with others. R. 208.

Ms. D stated that she lived by herself in a townhome and that her daily activities included personal care, reading, playing card games, watching TV, making meals, and performing household tasks such as laundry, vacuuming, cleaning bathrooms, and watering flowers. R. 70,

2

203-04, 206.  She also drove alone, handled her finances, and shopped in stores and online for groceries, clothes, and gifts for her grandchildren.  R. 206.  She socialized with others every day by phone, in person, and on the computer, but would become overwhelmed when gathering at others' homes and would leave after a few hours.  R. 207.  She also went to her boyfriend's home most days, saw her mother once a week, and took her mother to doctor appointments.  R. 204, 207.  She stated that she handled stress "so so," and that it wears her out.  R. 209.  As to handling changes in routine, Ms. D stated that it was hard for her to do anything, even when planned.  R. 209.

The SSA denied Ms. D's application initially and on reconsideration.  R. 131-35, 139-41.  Ms. D requested a hearing, which was held via videoconference by Administrative Law Judge ("ALJ") Penny Loucas on June 17, 2019.  R. 10, 41-80.  Ms. D testified in support of her claim, describing her work history and the limitations she experienced from her impairments.  R. 10, 47-72.  Vocational expert Gene Burkhammer also testified at the hearing.  R. 10, 72-79.

On July 1, 2019, the ALJ denied Ms. D's claim in a written decision applying the required five-step evaluation process.  R. 10-21; 20 C.F.R. § 404.1520(a).  At step one, the ALJ found that Ms. D had not engaged in substantial gainful activity since her alleged onset date of April 7, 2017.  R. 13.  At step two, the ALJ found that Ms. D's fibromyalgia was a severe impairment.  R. 13.  However, the ALJ determined that Ms. D's other impairments, including her mental impairments of depression and anxiety, were not severe.  R. 13-14.

At step three, the ALJ found that Ms. D does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  R. 15.  Specifically, the ALJ considered the evaluation criteria for fibromyalgia, and concluded that "while . . . [Ms. D's]

medically determinable impairment of fibromyalgia is severe, it does not meet or medically equal any Listing." R. 15. The ALJ did not specify which, if any, Listings she considered in reaching this conclusion.

Next, the ALJ determined that Ms. D retains the residual functional capacity ("RFC") to perform "light work, as defined in 20 C.F.R. § 404.1567(b) except: She can never climb ladders, ropes or scaffolds. She must avoid work at unprotected heights or operating dangerous moving equipment such as power saws and jackhammers." R. 15. Based on this RFC, the ALJ found at step four that Ms. D is capable of performing past relevant work as a customer service representative. R. 20.

The Social Security Appeals Council declined Ms. D's request for review. R. 1-3. As a result, the ALJ's decision became the final decision of the Commissioner subject to judicial review. 42 U.S.C. § 405(g). Ms. D. filed this lawsuit on May 29, 2020, challenging the ALJ's denial of her claim for benefits. Compl. [ECF No. 1].

## II.     Legal Standard

Review of the Commissioner's denial of an application for disability benefits is limited and deferential, requiring a federal court to affirm if the decision is supported by "substantial evidence" on the record as a whole. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014). Substantial evidence is less than a preponderance; it is relevant evidence that a reasonable person would find adequate to support the ALJ's determination. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). A reviewing court must consider not only the evidence that supports the conclusion, but also that which detracts from it. *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000). However, the court does not reweigh the evidence and should not reverse the Commissioner's decision simply

because substantial evidence might also support a different conclusion. *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). So long as the Commissioner's decision does not fall outside of the "available zone of choice," it should be affirmed. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). In other words, where the Commissioner's decision is among the reasonable conclusions that can be drawn from the evidence in the record as a whole, it will not be disturbed. *See Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007); *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**III.   Discussion**

Ms. D. raises three challenges to the ALJ's determination that she does not qualify for disability benefits under the SSA. First, she argues that the ALJ committed legal error in step three by not identifying which Listings were considered in the equaling analysis. Next, Ms. D. argues that the ALJ erred in step two by failing to identify all of her severe impairments, particularly her depression and anxiety. Finally, Ms. D. contends that the ALJ improperly discounted the opinion of her treating physician.

**A.  Step Three Analysis**

Ms. D argues that the ALJ did not sufficiently articulate her conclusion in step three that Ms. D's fibromyalgia does not medically equal a Listing. Ms. D contends that the ALJ was required to specify which Listings were considered in the equaling analysis, and that the failure to do so constitutes legal error.

The level of articulation required for a finding about medical equivalence in step three is governed by Social Security Ruling ("SSR") 17-2p, which became effective on March 27, 2017. *See* SSR 17-2p, 2017 WL 3928306 at *4. Under SSR 17-2p, if an ALJ believes that the evidence in the record does not reasonably support a finding that the claimant's impairment medically

5

equals a Listing, "the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). As explained in SSR 17-2p, further articulation is not required because "[a]n [ALJ]'s articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.*

Because the ALJ was not required to specify which Listings were considered in in the equaling analysis, Ms. D's challenge to the ALJ's step three finding lacks merit.

**B.  Step Two Analysis**

Ms. D next argues that the ALJ failed to include all of her severe impairments at step two of the sequential evaluation. Ms. D contends that, in addition to identifying her fibromyalgia as a severe impairment, the ALJ should have found that her depression and anxiety were also severe impairments. Ms. D argues that the ALJ's failure to do so rendered the ALJ's subsequent analysis and conclusions defective.

This argument is rejected for two reasons. First, the ALJ specifically considered whether Ms. D's depression and anxiety were severe impairments, and her finding that they were not is supported by substantial evidence in the record as a whole. R. 13-14. In evaluating Ms. D's mental impairments, the ALJ considered the four broad functional areas of mental functioning set out in the regulations for evaluating mental disorders and substantiated her findings. 20 C.F.R. § 404.1520a(c)(3); R. 13-14. Regarding the first area—understanding, remembering, or applying information—the ALJ determined that Ms. D. had mild limitation. R. 13. The ALJ

6

found that although Ms. D alleged difficulty remembering, following instructions, and taking medications without reminders, she was able to live independently, prepare meals, pay bills, shop, drive, read, play games, provide information about her health and work history, and respond to questions from medical providers.  R. 13.  As to the second functional area of interacting with others, the ALJ found Ms. D had no limitations because she is able to shop, spend time with friends and family, deal appropriately with authority, and was described as pleasant and cooperative during appointments.  R. 13.  For the third functional area of concentrating, persisting, or maintaining pace, the ALJ found Ms. D had mild limitation because although she had some challenges with focusing generally, she was able to drive, prepare meals, watch TV, read, play games and use the internet.  R. 14.  Regarding the fourth area of adapting or managing oneself, the ALJ found that Ms. D had no limitation because she is able to manage self-care and personal hygiene, has normal mood and affect, and has no problems with temper control.  R. 14.

In assessing the severity of Ms. D's anxiety and depression, the ALJ also considered the August 2, 2017 medical opinion provided by Ms. D's treating psychotherapist, David Wright, MSW LISCW.  R. 14, 298-300.  Mr. Wright treated Ms. D for her mental disorders from May through October 2017.  R. 267-78, 314-21.  Mr. Wright opined that Ms. D had no limitations in her ability to understand, remember, and carry out instructions, and her ability to engage in social interactions.  R. 298-99.  While Mr. Wright did find marked limitations in Ms. D's ability to respond to work pressures and changes in routine work settings, he attributed these limitations to Ms. D's "physical limitations . . . such as fibromyalgia and depression/anxiety complicating her ability over a period of time as expected in a work environment."  R. 299.  Mr. Wright found no other capabilities to be affected by Ms. D's impairments.  R. 299.  When asked what medical or

7

clinical findings supported his opinion, Mr. Wright wrote "defer to medical." R. 299. The ALJ found that Mr. Wright's opinion was not fully persuasive because it was not consistent with the evidence of record, not well supported, not based on any clinical findings, and was vague and imprecise. R. 14.

The ALJ further considered the opinions of two state agency medical examiners who determined that Ms. D had mild limitations in her ability to understand, remember, or apply information; no difficulties in interacting with others; mild limitations in concentration, persistence or pace; and no limitations in adapting or managing herself. R. 14, 107-08, 120-21.

Similarly, Ms. D's self-reported activities and the medical opinion evidence support the ALJ's determination at step two that Ms. D's depression and anxiety were not severe impairments. Because the ALJ's step two determination is supported by substantial evidence in the record as a whole, it is not erroneous.

The second basis for rejecting Ms. D's challenge to the ALJ's step two determination is that even if the ALJ had erred in determining Ms. D's mental impairments were non-severe, that error would have been harmless. This is because once a claimant clears the step two hurdle, as Ms. D did here, the remaining steps of the sequential evaluation process require the ALJ to analyze all of the claimant's impairments, whether severe or non-severe, in determining her RFC. 20 C.F.R. § 404.1545(e). As such, "the failure to find additional impairments at Step Two does not constitute reversible error when an ALJ considers all of a claimant's impairments in the remaining steps of a disability determination." *Johnson v. Comm'r of Soc. Sec.*, No. 11-1268 JRT/SER, 2012 WL 4328413, at *21 (D. Minn. July 11, 2012) (internal quotations omitted), *report and recommendation adopted*, No. 11-1268 JRT/SER, 2012 WL 4328389 (D. Minn. Sept. 20, 2012); *see also Snyder v. Colvin*, No. 12-3104 MJD/JJK, 2013 WL 6061335, at *9 (D. Minn.

Nov. 18, 2013) ("[A]n error for failure to find a severe impairment at Step Two is harmless if the claimant makes a threshold showing of *any* severe impairment [and] the ALJ continues with the sequential evaluation process and considers all impairments, both *severe and nonsevere.*") (quotations omitted) (emphasis in original).

Here, after making the step two findings, the ALJ continued with the sequential evaluation process and considered all of Ms. D's impairments, including her depression, anxiety, in evaluating her RFC. R. 15-20. The RFC evaluation included a review of the records explored above as well as the medical records from Ms. D's treating physician, Dr. Katherine L. Clubb, from May 2017 through February 2019. R. 16-18. These records contain the following references to Ms. D's mental impairments: a diagnosis of depression on May 3, 2017; an observation on August 21, 2017 that Ms. D was "cheerful with an upbeat mood and affect" and that her "depression . . . was stable and well controlled"; a statement on November 13, 2017 that Ms. D's anxiety makes her pain worse; an observation on July 17, 2018 that Ms. D "had an appropriate mood and affect"; statements on October 17, 2018 that Ms. D "was pleasant with a flattened affect" and reported that "her fibromyalgia 'fog' was getting worse"; and statements on February 18, 2019 that Ms. D she had "appropriate mood and affect" and reported that she was experiencing increased stress and the needed to write things down to help with forgetfulness. R. 16-17.

The ALJ also considered a June 5, 2019 medical opinion provided by Dr. Clubb pertaining to Ms. D's mental ability to perform work-related activities. R. 18-19, 469-72. Dr. Clubb opined that Ms. D had moderate limitation in carrying out simple instructions and remembering detailed instructions. R. 470. When asked what medical or clinical findings supported this assessment, Dr. Clubb wrote "Fibromyalgia Fog – Inattention and forgetfulness."

9

R. 470.  Dr. Clubb also opined that Ms. D had moderate limitation in responding appropriately to work pressures and changes in a routine work setting.  R. 471.  Dr. Clubb noted that "work stress increase causes pain and inattention."  R. 471.  Dr. Clubb cited "symptoms" as the medical or clinical findings supporting this assessment.  R. 471.  Dr. Clubb further opined that physical pain and fatigue impacted Ms. D's ability to lift, stand, or sit for prolonged periods.  R. 471.  Dr. Clubb listed "Fibromyalgia tender points" as the medical or clinical findings supporting this assessment.  R. 471.  The ALJ found Dr. Clubb's opinion unpersuasive because it was neither consistent with the record nor well supported.  R. 19.  The ALJ noted that Dr. Clubb relied heavily on Ms. D's subjective complaints and did not provide references to treatment notes, clinical findings, or diagnostic tests to support the limitations.  R. 19.

The ALJ also analyzed the evidence regarding Ms. D's daily activities, which included preparing meals, shopping, using a computer, paying bills, counting change, handling a savings account, using a checkbook, reading, watching television, playing card games, and spending time with her family and boyfriend.  R. 19.  The ALJ found that this evidence "is consistent with a residual functional capacity for light work."  R. 19.  In reaching this conclusion, the ALJ recognized that Ms. D has problems with "memory and following instructions," and that "[s]he has some problems handling stress or changes in her routine."  R. 19-20.  However, the ALJ found that "to the extent that she is self-limited, this does not in itself establish a medical or pathological basis for such restrictions, nor is the record consistent with her alleging an incapacity for all sustained work activity."  R. 20.  Because the ALJ considered Ms. D's mental impairments in the RFC evaluation, any error in not finding them severe at step two is harmless.

**C. Opinion Evidence**

Ms. D argues that the ALJ erred in favoring the opinions from the non-examining state agency consultants over the opinion of her treating physician, Dr. Clubb, when determining the severity of Ms. D's impairments and her functional limitations. Ms. D contends that the ALJ's reliance on non-treating state agency consultants was improper because Dr. Clubb documented Ms. D's symptoms, limitations, and impairments contemporaneously with medical exams and treatment over several years.

For claims like Ms. D's that were filed on or after March 27, 2017, the weight assigned to medical opinions is governed by 20 C.F.R. § 404.1520c. *Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). Under this regulation, the ALJ does not defer to any medical opinions, including opinions from the claimant's treating medical sources. 20 C.F.R. § 404.1520c(a). The ALJ instead considers all medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how those two factors were considered in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to explain the remaining factors unless the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

In addition to Dr. Clubb's June 5, 2019 medical opinion of Ms. D's mental limitations, discussed above, Dr. Clubb also rendered medical opinions of Ms. D's physical limitations on July 20, 2017 and June 5, 2019. R. 279-82, 473-76. In her 2019 opinion regarding physical limitations, Dr. Clubb opined that Ms. D could occasionally lift or carry less than 10 pounds, frequently lift or carry less than 5 pounds, stand or walk less than 2 hours in an 8-hour workday,

11

and sit less than 6 hours in an 8-hour workday. R. 473-76. Dr. Clubb also stated that pulling and pushing were limited, neck movements were frequently limited, balancing and kneeling were occasionally limited, Ms. D could never climb, crouch, crawl, or stoop, and she could occasionally reach, handle, and finger with bilateral hands. R. 475. When asked to identify the medical or clinical findings supporting this assessment, Dr. Clubb stated: "Extensive tender points consistent with Fibromyalgia 12 of 18," and "Widespread pain index 16 of 19." R. 475. Dr. Clubb also opined that Ms. D should avoid all exposure to hazards such as machinery and heights, avoid moderate exposure to extreme heat and cold, and avoid concentrated exposure to wetness, humidity, noise, vibration, and pulmonary irritants. R. 476. In specifying the medical or clinical findings supporting these environmental limitations, Dr. Clubb stated: "Extreme heat/cold/humidity can trigger flare; machinery and heights – concern for risk of fall or injury due to inattention; and cold exposure – Raynaud's Phenomenon." R. 476.

Dr. Clubb's 2017 medical opinion of Ms. D's physical limitations was substantially similar to her 2019 opinion, except that in 2017 Ms. D. could occasionally carry 10 pounds, frequently lift or carry less than 10 pounds, and her neck movements were occasionally limited. R. 279-80. Additionally, she could balance frequently, could occasionally climb, kneel, crouch, crawl, and stoop, could occasionally reach bilateral hands, and could frequently handle and finger bilateral hands. R. 281. Dr. Clubb noted that "when [Ms. D] does repetitive movement or manipulation she has flare up of pain in neck, shoulders, trapezoids and this also triggers headaches." R. 281. The 2017 opinion includes the same limitations on standing, sitting, pushing, and pulling restrictions as the 2019 opinion. The 2017 opinion notes that "repetitive pushing or pulling may cause flare ups of fibromyalgia pain." R. 280. Regarding environmental limitations, Ms. D was to avoid concentrated exposure to extreme heat and cold, wetness,

humidity, pulmonary irritants, and hazards. R. 282. Dr. Clubb noted that "Extreme temps or climate change can flare up fibro pain," and that "[patient] is prone to wheezing so exposure to fumes etc may trigger an attack." R. 282.

The ALJ found that Dr. Clubb's medical opinions were not persuasive because they were not consistent with the evidence of record and were not well supported. The ALJ explained that Dr. Clubb "relied more on the claimant's subjective complaints" and "did not provide references to treatment notes, clinical findings, or diagnostic tests to support her limitations." R. 19.

The Court agrees that Dr. Clubb's opinions are not well supported or consistent with the record. The only medical evidence cited in any of Dr. Clubb's opinions is a statement in the June 2019 opinion on physical limitations, which specifies that Ms. D has: "Extensive tender points consistent with Fibromyalgia 12 of 18," and "Widespread pain index 16 of 19." R. 475. Beyond this brief reference to her clinical findings, Dr. Clubb's medical opinions "consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses. They cite no medical evidence and provide little to no elaboration, and so they possess 'little evidentiary value.'" *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). In addition to lacking support, Dr. Clubb's opinions about the severity of Ms. D's physical and mental limitations are not consistent with Ms. D's self-reported daily activities. Accordingly, the ALJ's decision to give little weight to Dr. Clubb's opinions was not erroneous.

## IV.     Recommendation

For the reasons discussed above, **IT IS HEREBY RECOMMENDED THAT:**

1. Ms. D's motion for summary judgment **[ECF No. 19]** be **DENIED;**

2. The Commissioner's motion for summary judgment **[ECF No. 21]** be

    **GRANTED;** and

3. This matter be dismissed with prejudice.


Date: October 26, 2021                          *s/ Katherine Menendez*
                                                Katherine Menendez
                                                United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.